**IN THE COURT OF APPEALS OF IOWA**

No. 23-0550
Filed June 5, 2024

**GEORGE PRENTISS III,**
      Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
      Respondent-Appellee.
_____

Appeal from the Iowa District Court for Clinton County, John Telleen, Judge.


The applicant appeals the summary dismissal of his fifth application for postconviction relief. **AFFIRMED.**


Katherine N. Flickinger of Hastings & Gartin Law Group, LLP, Ames, for appellant.

Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee State.


Considered by Ahlers, P.J., Badding, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**POTTERFIELD, Senior Judge.**

George Prentiss III appeals the summary dismissal of his fifth application for postconviction relief (PCR) following his 2002 convictions for first-degree murder and first-degree robbery. He argues summary disposition was not appropriate because he created a genuine issue of material fact regarding whether his application contained newly-discovered evidence that would except it from the three-year time-bar.

**I. Background Facts and Proceedings.**

Based on the evidence presented at Prentiss's underlying criminal trial, a reasonable jury could have found the following:

> Pam Wiedner worked as a bartender at the River City Brewing Company in Clinton. At about 5:00 p.m. on January 21, 2001, customers Michelle Latimer and Terry Greve entered the bar but found no bartender. Soon after they arrived, a man later identified as the defendant's uncle, Robert Jackson, emerged from the kitchen area. The man stated, "She'll be alright" and exited the front door. Unable to obtain service, Latimer and Greve left the establishment and went to a nearby tavern. Once there, they became concerned about the missing bartender at the River City Brewing Company. As a result, Greve returned to the bar with an acquaintance. Once inside, Greve and his companion observed one other customer present, but still no bartender. Greve, his companion, and the other customer began looking for the bartender. They found Ms. Wiedner's body in the kitchen area. She had been stabbed to death. Cash was missing from the bar's cash register.
> During the morning of January 16, 2001, a Clinton Police officer and a Division of Criminal Investigation (DCI) agent went to an apartment building in Clinton to conduct interviews as part of their investigation into Weidner's death. While at the apartment building, they spoke with the defendant. Prentiss informed them he was in his apartment all day on January 15. He claimed he had not seen Robert Jackson that day.
> Later on January 16, Prentiss was taken into custody on an Illinois warrant for a probation violation. . . . At the conclusion of the interview, an officer booked Prentiss on the probation violation.
> During the booking process, Prentiss asked to speak with Officer Ann Bormann, who was present in the booking area.

Bormann agreed to speak with Prentiss. She informed him of his Miranda rights at the outset of the interview which began at approximately 11:35 p.m. During the interview, Prentiss admitted he was at the bar with Jackson, but claimed he left before Ms. Wiedner was killed. During the interview, Bormann obtained a DNA sample from Prentiss with his written permission.

Bormann interviewed Prentiss on three more occasions over the course of the following three days. During these videotaped interviews, Prentiss admitted that he was at the tavern on January 15 with Jackson, that he grabbed Wiedner so Jackson could steal from the cash register, and that he forced Wiedner into the back room where Jackson stabbed her to death. Law enforcement authorities also recovered physical evidence linking the defendant and his uncle to the murder and robbery.

*State v. Prentiss*, No. 02-0053, 2003 WL 21360908, at *1–2 (Iowa Ct. App. June 13, 2003).

Prentiss filed his fifth PCR application in December 2021. He later amended it to assert he had newly-discovered evidence that warranted a new trial and pointed to a 2001 discussion his mother had with his uncle and co-defendant, Jackson. Prentiss's mother, Lizzie, filed an affidavit asserting that two days before Wiedner's murder, Jackson called her and reported he heard about "George" flirting with his wife, was very angry about the fact, and planned to hurt "George." Lizzie believed Jackson was talking about her husband, as Prentiss was generally called "Junior." In her February 2023 affidavit, Lizzie stated, "I never discussed this with my son or his lawyers during his trial and have only recently remembered it. I also never came forward about this because after my son lost his appeal and first postconviction, I did not think anything else could be done for him."

The State moved for summary judgment, asserting Prentiss's application was time-barred by the statute of limitations. Prentiss resisted. The district court granted the State's motion,[1] and Prentiss appeals.

## II. Standard of Review.

"We generally review [PCR] proceedings, including summary dismissals of postconviction-relief applications, for errors at law." *Moon*, 911 N.W.2d at 142. We apply "summary judgment standards to the statute-of-limitations issue." *Id.* at 143. This means "[w]e view the record in the light most favorable to the nonmoving party" and only conclude summary disposition was appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* at 142 (citation omitted).

## III. Analysis.

Under the statute of limitations for PCR filings, "applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Iowa Code § 822.3 (2021). Procedendo issued on Prentiss's direct appeal on September 25, 2003,

---

[1] Here, both parties and the district court skipped the procedural step of applying the ground-of-fact test to determine whether Prentiss's application survived the statute of limitations. Instead, the court jumped ahead to the newly-discovered-evidence test, which is to be used when addressing the substantive merits of an applicant's newly-discovered-evidence claim. *See Moon v. State*, 911 N.W.2d 137, 143 (Iowa 2018) ("We again emphasize the ground-of-fact exception pursuant to section 822.3 is not the same as a substantive claim for postconviction relief based on newly discovered evidence pursuant to section 822.2(1)(d)."); *see also Harrington v. State*, 659 N.W.2d 509, 520–21 (Iowa 2003) (clarifying the difference between the two concepts).

so the PCR statute of limitations ran in September 2006. Prentiss filed this application in 2021. Thus, unless an exception applies, Prentiss's PCR application is time-barred.

There is an exception to the statute of limitations for "a ground of fact or law that could not have been raised within the applicable time period." *Id.* "The onus is on the applicant" asking for PCR outside the statute of limitations to "meet the 'obvious requirement' that he or she could not have raised the ground of fact within the limitations period." *Moon*, 911 N.W.2d at 143 (citation omitted). The applicant also has the burden to show that "the ground of fact is relevant to the challenged conviction." *Schmidt v. State*, 909 N.W.2d 778, 798 (Iowa 2018) (citation omitted). Within this context, "relevant" means "the type of fact 'that has the potential to qualify as material evidence for purposes of a substantive claim under section 822.2.'" *Id.* (citation omitted).

A fact could have been raised within the limitations period if it was either known to the applicant or it could have been discovered with the exercise of due diligence during the statute-of-limitations window. *Quinn v. State*, 954 N.W.2d 75, 76 (Iowa Ct. App. 2020). Lizzie's affidavit suggests she only recently shared the fact of the conversation with Prentiss, so the question is whether Prentiss could have, with the exercise of due diligence during the three-year window, learned of the conversation. *See Cornell v. State*, 529 N.W.2d 606, 611 (Iowa Ct. App. 1994) ("[O]ur focus of inquiry has always been whether the applicant was or should have been 'alerted' to the potential claim before the limitation period expired.").

Using summary judgment standards, we assume Lizzie's affidavit is factually accurate—both that the conversation between her and Jackson took

place as she described and that she only recently shared this information with Prentiss. But even viewing the evidence in the light most favorable to Prentiss, we conclude that he could have learned of the conversation between Jackson and his mother within the statute-of-limitations period. Prentiss was aware his uncle was his co-defendant, and he knew the role his uncle played in the crimes. In fact, Prentiss's trial strategy was to claim that while Jackson went into the bar with the intention to steal from it, he was unaware of the plan and did not take part in stabbing Wiedner. So Prentiss was on notice of his need to investigate Jackson's motive and actions, and his mother was already in possession of the evidence before Prentiss's underlying criminal trial. *Cf. State v. Uranga*, 950 N.W.2d 239, 243 (Iowa 2020) (discussing "due diligence" and stating, "The defendant is 'not called upon to prove he sought evidence where he had no reason to apprehend any existed.' However, a defendant 'must exhaust the probable sources of information concerning his case; *he must use that of which he knows*, and *he must follow all clues* which would fairly advise a diligent man that something bearing on his litigation might be discovered or developed.'" (citations omitted)).

Because Prentiss failed to raise a new ground of fact that allows him to avoid the statute of limitations, his fifth PCR application is time-barred.

**AFFIRMED.**